UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| GEOCEL, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 3:10-CV-474-TLS |
| CHEM LINK INC., | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This case involves United States Reissued Patent Number RE 41,586 ("the '586 Patent"), issued on August 24, 2010, and entitled "Pitch Pocket and Sealant." This matter is before the Court on cross motions for summary judgment on the first count of the Plaintiff's Complaint, contesting whether the '586 Patent claims 21–25 violate the rule against recapture. For the reasons stated below, the Court will grant Defendant's Motion and deny the Plaintiff's Motion because the '586 Patent claims 21–25 do not violate the rule against recapture.

## BACKGROUND

**A.    Procedural Background**

On November 9, 2010, the Plaintiff filed a Complaint [ECF No. 1]. On December 22, 2010, the Plaintiff filed an Amended Complaint [ECF No. 4] seeking declaratory judgment that the '586 Patent claims 21–25 violate the rule against recapture, that claims 21–25 are invalid under 35 U.S.C. §§ 102 or 103, that the reissue patent is unenforceable due to inequitable conduct, that the Plaintiff has not infringed on claims 10, 11, and 13–20, and that it is entitled to absolute and equitable intervening rights under 35 U.S.C. § 252. On December 30, 2010, the Defendant filed an Answer to First Amended Complaint for Declaratory Judgment, Affirmative

Defenses, Counterclaim, and Jury Demand [ECF No. 5]. The counterclaim is for patent infringement.

This matter is before the Court on the Defendant's Motion for Partial Judgment on the Pleadings as to Count I (Recapture Rule) [ECF No. 8], along with a brief in support [ECF No. 10], filed on December 30, 2010, and the Plaintiff's Motion for Partial Summary Judgment of Invalidity of Reissue Claims 21–25 under the Recapture Rule [ECF No. 11] filed on January 7, 2011, along with a brief in support [ECF Nos. 12 and 18], Statement of Undisputed Facts [ECF No. 13], and an Appendix [ECF No. 14]. On January 13, the Plaintiff filed its Opposition to Defendant's Motion for Partial Judgment on the Pleadings [ECF No. 17] along with an Appendix [ECF No. 19]. On January 20, the Plaintiff filed an Answer [ECF No. 21] to the Defendant's counterclaim. On January 20, the Defendant filed a Reply [ECF No. 22] in support of its Motion for Partial Judgment on the Pleadings. On February 7, the Defendant filed its Opposition to the Plaintiff's Motion for Partial Summary Judgment of Invalidity [ECF No. 23] and Statement of Genuine Disputes [ECF No. 24]. On February 22, the Plaintiff filed a Reply in Support of its Motion for Partial Summary Judgment [ECF No. 26]. These motions are fully briefed and ripe for ruling.

**B.** **Factual Background**

1. *The '924 Patent Application*

On December 12, 2000, the Defendant[1] filed patent application number 09/735,265 with the United States Patent and Trademark Office (PTO). The application included 20 claims: a set of composition claims (1–12) and a set of method claims (13–20). On February 28, 2002, the examiner issued the first office action with a non-final rejection to claims 1–5 and 8–20 and objecting to claims 6 and 7. The examiner based her rejection on her finding that the claims were obvious under 35 U.S.C. § 103(a) in light of United States Patent Number 6,077,896 (Yano). The office action stated:

> Yano discloses a curable composition comprising a silyl-group containing an oxyalkylene polymer of the type set forth in applicant's claims, a diol containing ether compound and a catalyst. Said compositions are useful for forming seals in building construction. The diol containing compound and catalyst of Yano et al overlap with the plasticizer of the present claims See col. 1, line 45 through col. 6, line 40. Because the components of Yano et al are essentially the same as those of applicant's invention, they are expected to possess essentially the same properties. Selection of preferred weight ratios of components to achieve an optimization of properties would have been obvious to one of ordinary skill in the art at the time of applicant's invention.

(Answer Ex. 1 at 35, ECF No. 5-1.) The examiner also objected to claims 6 and 7 because they were dependent on a rejected independent claim, but stated that the claim would be allowable as an independent claim including all of the limitations of the base claim and any intervening claims.

On May 28, 2002, the Defendant filed its first amendment with the PTO. In addition to amending the specification and dependent claims 6 and 8, the Defendant also presented argument as to why the claims were not obvious in light of the prior art, specifically Yano. The

---

[1] The inventors, Phillip C. Georgeau and Lisa A. Mulder, filed the application and assigned their rights to the Defendant, but for simplicity the Court will refer to the Defendant as the patent applicant.

amendment stated that "[i]t is submitted that the cited Yano et al. patent does not teach or suggest a composition containing the required 'hygroscopic plasticizer present in an amount that is effective to promote rapid and deep curing.'" (Answer Ex. 1 at 39, ECF No. 5-1.) The argument continued that "with respect to claims 13–20, it is respectfully submitted that the Yano et al. patent, while disclosing sealants for building or construction, does not teach or suggest a method of forming a seal around a roof penetration." (*Id.* at 40.)

On August 14, 2002, the examiner issued a second office action, with a final rejection of claims 1–20. The examiner repeated the basis for her rejection from the first office action and stated that "Applicant's arguments filed 5/28/02 have been fully considered but they are not persuasive." (*Id.* at 48.) The examiner's rejection was based only on the Defendant's hygroscopic plasticizer argument and did not address its argument pertaining to the roof penetration limitation in claims 13–20.

On November 13, 2002, the examiner conducted a telephonic interview with the Defendant. According to the examiner's summary the Defendant further explained the hygroscopic plasticizer limitation and the roofing material limitation. After the interview the examiner issued an office action on November 15, 2002, clarifying that the final rejection was not as to all claims 1–20, correcting August 14 office action which improperly included claims 6 and 7 in its final rejection.

On January 14, 2003, the Defendant filed an amendment. The amendment contained changes to the specification, a summary of the November 13 interview, and additional argument. In the amendment the Defendant noted that the examiner interview summary states that "Yano does not specifically mention roofing, materials. Applicants claims 1–12 are not specifically

4

drawn to roofing materials." (*Id.* at 60 (citing *id.* at 51)).) The amendment continued by noting that "[w]hile it is not entirely clear, it appears that the Examiner is agreeing that claims 13–20, drawn to a method of forming a seal around a roof penetration, are patentable over the applied Yano et al. reference." (*Id.*) After providing more detailed argument again on the hygroscopic plasticizer limitation the Defendant argued that "the composition claims (1–12) are patentable over the applied Yano et al. reference." (*Id.* at 66.) The Defendant continued in the next paragraph by addressing the method claims 13–20, arguing that they were patentable over Yano due to the hygroscopic plasticizer limitation and the roof penetration limitation.

On February 5, 2003, the PTO issued a Notice of Allowability, allowing all claims. After handling fees and corrections the PTO issued patent number 6,579,924 on June 17, 2003.

2. *The Application for the '586 Reissue Patent*

On June 14, 2005, the Defendant filed Application Number 11/152,840 with the PTO seeking a reissue of the '924 patent. In addition to the original twenty claims filed as part of the application for the '924 patent, the Defendant added five new claims, one independent and four dependent. Claim 21, the independent claim, read:

> A method of forming a seal around a roof penetration, comprising:
>
> dispensing a one-part moisture curable, pourable sealer composition into a pitch pocket formed around the roof penetration, said one-part moisture curable pourable sealer composition containing a silyl-terminated polymer.

(ECF No. 5-5 at 15.) The Defendant's application explained that "[t]he newly added claims are patterned after originally issued claims 13–18, respectively, but without the unduly restrictive limitation for 'a hygroscopic plasticizer present in an amount that is effective to promote rapid

5

and deep curing.'" (*Id.* at 16.)

On June 26, 2008, the PTO mailed a non-final rejection, in which the examiner noted that: "Claims 1–5 are rejected under 35 U.S.C. 102(b) as being anticipated by Yukimoto et al., U.S. Patent # 5,063,270" and that "Claims 6–25 are allowable."[2] (ECF No. 5-4 at 41.) The Examiner noted that he "did not unearth any evidence that it had been previously contemplated that a silane-terminated polymer could be employed as the sealant in the pitch pocket around a roof penetration." (*Id.*) On August 24, 2010, the PTO issued the '586 patent.

## SUMMARY JUDGMENT STANDARD

As an initial matter, the Court must determine the standard in this case. The parties present their motions under two different standards. The Defendant's Motion is presented pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiff's Motion is presented pursuant to Rule 56. The parties present the same issues in their briefs: whether the patent prosecution history of the '586 patent improperly claims material surrendered in the prosecution of the '924 patent and therefore violates the rule against recapture. Given that the Defendant had the opportunity to fully respond to the Plaintiff's Motion for Partial Summary Judgment the Court will rule on both motions under the summary judgment standard instead of under a Rule 12 dismissal standard.

---

[2] On March 31, 2009, the examiner sent a non-final rejection in which he also rejected claims 6–9 and 12 and objected to claims 10 and 11. The examiner rejected claims 6–9 and 12 pursuant to 35 U.S.C. § 102(b) as anticipated by Klauck et al., WO 99/48942. The examiner objected to Claims 10 and 11 because they were dependent on a rejected claim. On July 30, 2009, the Defendant cancelled claims 1–9 and 12 and amended claim 10, on which claim 11 depended. None of these claims are material to resolving the issue before the Court on the partial summary judgment motions currently pending. Thus, the Court does not review the prosecution of claims 1–12 in depth.

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

The parties do not dispute any material facts relevant to the motions currently before the Court. Pursuant to Local Rule 56.1 the Plaintiff filed a Statement of Undisputed Facts Regarding Its Motion for Partial Summary Judgment [ECF No. 13] and the Defendant filed a Statement of Genuine Disputes Regarding Geocel, LLC's Motion for Partial Summary Judgment [ECF No. 24]. Upon review, the parties utilize these filings to further their legal arguments, but do not present any actual factual disputes. The Defendant's Statement even notes that "[i]n general terms, the facts relevant to Geocel's Motion for Partial Summary Judgment are found solely in the prosecution history of United States Patent 6,579,924 (the 'Original Patent'), a collection of

7

written documents forming the official record of the PTO's allowance of the Original Patent." (ECF No. 24 at 1.) The Defendant's Statement also makes note of the "*undisputed* record." (*Id.* at 2) (emphasis added.) Because the parties do not dispute any facts the Court must only determine if judgment is appropriate as a matter of law.

> Title 35 of the United States Code, Section 251 provides in part that:
>
> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid . . . by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

The rule against recapture "prevents a patentee from regaining through reissue subject matter that he surrendered in an effort to obtain allowance of the original claims." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1313 (Fed. Cir. 2010) (quoting *Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998)). The "reissue statute has limits[, it] was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute de novo his original application." *Id.* (quoting *In re Weiler*, 790 F.2d 1576, 1582 (Fed. Cir. 1986)). Courts apply the rule against recapture by applying a three step test. *Id.* at 1314 (citing *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1349 (Fed. Cir. 2005); *Pannu v. Storz Instruments, Inc.*, 258 F.3d 1366, 1371 (Fed. Cir. 2001)). First, "the court construes the reissued claims to determine whether and in what aspect the reissue claims are broader than the original patent claims." *Id.* (quoting *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997)). Second, "if the reissue claims are broader, the court determines

whether the patentee surrendered subject matter and whether the broader aspects of the reissued claim relate to the surrendered subject matter." *Id.* (quoting *In re Clement*, 131 F.3d 1464, 1468–69 (Fed. Cir. 1997)). Third, a court must determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule." *Id.* (quoting *Pannu*, 258 F.3d at 1371).

An issued patent carries with it a presumption of validity. 35 U.S.C. § 282. "The presumption of validity under § 282 is a procedural device, placing the burden of proving invalidity on the party asserting it." *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985). The determinations the examiner makes on a reissue application are not binding on this Court, however, the Court must consider those determinations as one factor "in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence." *Id.*[3]

The parties only dispute the analysis under the second step—whether the broader aspects of the reissue claim relate to subject matter the Defendant surrendered while prosecuting the '924 patent. "To determine whether a patentee surrendered subject matter, [courts] ask whether an objective observer viewing the prosecution history would conclude that the purpose of the patentee's amendment or argument was to overcome prior art and secure the patent." *Id.* (quoting *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1323 (Fed. Cir. 2006)). "If the patentee surrendered

---

[3] The parties dispute whether *Fromson* as cited by *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985), creates a heavier burden of proving invalidity. The burden on the Plaintiff of showing invalidity in this case is not heavier, except to the extent that it must overcome the examiner's determination as one factor among many the Court will consider in its validity determination. This does not alter the burden the Plaintiff faces, it simply provides one additional hurdle it must clear before satisfying its burden.

9

by argument, he must clearly and unmistakably argue that his invention does not cover certain subject matter to overcome an examiner's rejection based on prior art." *Id*. (citing *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1376 (Fed. Cir. 2006); *Hester*, 142 F.3d at 1482). The main dispute that the parties address in their briefs is whether during prosecution the Defendant clearly and unmistakably argued its invention required the hygroscopic plasticizer limitation to overcome the Yano et al. reference, such that any attempt to reclaim subject matter by not including this limitation would violate the recapture rule.

Subject matter cannot be clearly and unmistakably surrendered when there are alternative basis provided to overcome prior art. Thus, when an applicant distinguishes prior art on two alternative grounds, he does not surrender subject matter on both of the alternative grounds for the purposes of the recapture rule. *Guidant Corp. v. St. Jude Med., Inc.*, 409 F. Supp. 2d 543, 544 (D. Del. 2006). The Defendant argues that it provided two separate and distinct limitations that distinguished claims 13–20 over the Yano et al. reference. First, the hygroscopic plasticizer limitation, and second, the roof penetration limitation. The Plaintiff argues that a significant amount of the prosecution history of the '924 patent relates to the hygroscopic plasticizer limitation and that this heavy reliance on the hygroscopic plasticizer is enough to constitute a clear and unmistakable surrender of any claimed subject matter that does not include this limitation. Although the Plaintiff provides a thorough recitation of the discussion of the hygroscopic plasticizer limitation in the prosecution history, it does not cite a single instance in which the Defendant fails to mention in any filing with the PTO that claims 13–20 are also distinguishable based on the roof penetration limitation. *MBO Laboratories* provides that a

"patentee's arguments that emphasize one feature cannot cure arguments that clearly surrender another." *MBO Labs.*, 602 F.3d at 1316. This holding in *MBO Laboratories* is consistent with the alternative grounds rule in *Guidant Corp.* In *MBO Laboratories*, the applicant had at one point during prosecution relied solely on referencing a retractable needle to overcome prior art, only later attempting to also distinguish its claims based on a safety flange accompanying its needle. In this case, the Defendant did not emphasize the hygroscopic plasticizer limitation as to claims 13–20. When discussing claims 13–20 the Defendant relied on the roof penetration limitation. (*See, e.g.*, Answer Ex. 1 at 40, ECF No. 5-1 (arguing that "with respect to claims 13–20, it is respectfully submitted that the Yano et al. patent, while disclosing sealants for building or construction, does not teach or suggest a method of forming a seal around a roof penetration".) The Defendant is not attempting to cure a clear surrender of subject matter without the hygroscopic plasticizer limitation by emphasizing the roof penetration limitation. As to claims 13–20, the Defendant clearly surrendered subject matter that did not contain the roof penetration limitation, but it did not surrender subject matter containing this limitation without the hygroscopic plasticizer limitation.

The Plaintiff makes two additional arguments that the Defendant surrendered any claimed subject matter not including the hygroscopic plasticizer limitation. First, that the Defendant's failure to object to the examiner's failure to mention the roof penetration limitation in every office action constitutes a clear and unmistakable surrender, and second, that method claims 13–20 are indistinguishable from composition claims 1–5 and 8–12 because claims 13–20 call for a composition that requires a hygroscopic plasticizer.

The Plaintiff argues that the examiner continually focused on the hygroscopic plasticizer limitation in all of the office action rejections, and the examiner's focus indicates a clear and unmistakable key issue—the hygroscopic plasticizer limitation—on which the Defendant distinguished its claims over Yano et al. The Defendant responds that the surrender by argument standard is too high for it to have surrendered claimed subject matter solely on the basis that it failed to respond to every examiner's statement during prosecution, including the examiner's focus on the hygroscopic plasticizer limitation. The Plaintiff replies by factually distinguishing the Board of Patent Appeals and Interferences's holding in *Ex Parte Yamaguchi*, 61 U.S.P.Q. 2d 1043, 1046–47 (B.P.A.I. July 31, 2001), on which the Defendant relies. In *Ex Parte Yamaguchi*, the Board ruled that the applicant's failure to respond to the examiner's comments during prosecution history could not constitute surrender in the context of the rule against recapture. *Id.* The Plaintiff highlights that *Ex Parte Yamaguchi* focuses on the examiner's reasons for allowance, which the examiner did not provide in this case. However, *Ex Parte Yamaguchi* still provides helpful guidance for the more general proposition that the clear and unmistakable surrender by argument requires affirmative statements by an applicant and failure to respond to the examiner's focus on only one of two limitations is not enough to constitute surrender.

The Defendant highlights that during prosecution of the '924 patent it presented two separate sets of claims, composition claims and method claims. It highlights this distinction because of its assertion that during prosecution it always distinguished the method claims based upon the additional limitation that the sealant was used in a method of forming a seal around a roof penetration. The Plaintiff responds that this distinction places form over substance because

all of the method claims called for a composition requiring a hygroscopic plasticizer. The Court finds that the distinction is meaningful because claims 21-25 granted as part of the '586 Patent are method claims and the independent claim 21 includes the limitation of "forming a seal around a roof penetration." This roof penetration limitation was consistently asserted as distinguishable over the prior art when the Defendant was prosecuting its original method claims 13–20. Thus, the method claims with the roof penetration limitation are meaningfully different because of their inclusion of this additional limitation, even if the claims also call for a particular composition.

The Defendant is entitled to judgment as a matter of law on the first count of the Plaintiff's Amended Complaint—alleging that the new reissue claims 21–25 violate the rule against recapture—because it did not surrender claimed subject matter containing the roof penetration limitation but lacking the hygroscopic plasticizer limitation. The Defendant consistently argued while prosecuting the original '924 Patent that its method claims were distinguishable over the prior art on the basis of the roof penetration limitation. Even though a greater percentage of the prosecution history discussed the hygroscopic plasticizer limitation, the Defendant did not surrender clearly and unmistakably by argument claimed subject matter containing only the roof penetration limitations. Because claims 21–25 in the '586 Reissue Patent are based on the method claims in the original patent that did not surrender the claimed subject matter containing only the roof penetration limitation, but omitting the hygroscopic plasticizer limitation , claims 21–25 contained appropriate subject matter for reissue under 35 U.S.C. § 251.

13

## CONCLUSION

The Court, being duly advised, GRANTS the Defendant's Motion for Judgment on the Pleadings [ECF No. 8] and DENIES the Plaintiff's Motion for Partial Summary Judgment [ECF No. 11]. The Court DISMISSES Count I of the Plaintiff's Amended Complaint [ECF No. 4]. This matter remains pending as to all parties and as to Counts II–V in the Plaintiff's Amended Complaint [ECF No. 4] and the Defendant's Counterclaim [ECF No. 5]. The Court SETS this matter for a telephonic status conference on September 29, 2011, at 11:30 AM. The Court will initiate the call.

SO ORDERED on August 25, 2011.

    /s Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION